# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| EILEEN YEISLEY, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IOWA HOSPITALS & CLINICS,<br><br>     Defendant. | Case No. 3:23-cv-00025-SHL-HCA<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................. 3

III.  UIHC is Not Immune from Plaintiff's Claims. ........................................................ 5

    A.  UIHC is Not the State of Iowa. .......................................................................... 5

    B.  Even if UIHC is Entitled to Sovereign Immunity, it Has Been Waived. ................... 6

    C.  Unjust Enrichment ............................................................................................... 8

IV.  Plaintiff Sufficiently Alleges that UIHC was a Party to the Relevant Communications . ................................................................................................................................ 10

    A.  UIHC Violated the ECPA by Secretly Duplicating and Forwarding Communications. ............................................................................................... 11

    B.  The Crime-Tort Exception Applies to UIHC's Party Defense. ................................ 11

    C.  UIHC violated § 2511(1)(d) of the ECPA, and the Party Defense Does Not Apply to that Violation. ........................................................................................................ 13

V.  Plaintiff Has Stated a Plausible Claim for Unjust Enrichment. ....................................... 15

VI.  Plaintiff Has Stated a Plausible Claim Under the CFAA. ................................................. 16

VII.  CONCLUSION ................................................................................................................ 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Abu v. Dickson*,
   No. 20-10747, 2021 U.S. Dist. LEXIS 52778 (E.D. Mich., Mar. 22, 2021) ........................... 26

*ACW Flex Pack LLC v. Wrobel*, Case,
   No. 22-cv-6858, 2023 U.S. Dist. LEXIS 128580 (N.D. Ill. Jul. 26, 2023) .............................. 27

*Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Hum. Servs.*,
   613 N.W.2d 674 (Iowa 2000) ..................................................................................... 12

*Alden v. Maine*,
   527 U.S. 706 (1999) .................................................................................................. 11

*Anderson v. Douglas & Lomason Co.*,
   540 N.W.2d 277 (Iowa 1995) ..................................................................................... 10

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) .................................................................................................. 23

*Behm v. City of Cedar Rapids*,
   922 N.W.2d 524 (Iowa 2019) ..................................................................................... 24

*Boehner v. McDermott*,
   484 F.3d 573 (D.C. Cir. 2007) ................................................................................... 23

*Brown v. Google*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...................................................................... 18

*Deteresa v. Am. Broadcasting Cos., Inc.*,
   121 F.3d 460 (9th Cir. 1997) ...................................................................................... 17

*Doe v. Meta*,
   2022 WL 17869218 (N.D. Cal. Dec. 21, 2022) ........................................... 18, 20, 21

*Doe v. Smith*,
   429 F.3d 706 (7th Cir. 2005) ...................................................................................... 15

*Endress v. Iowa Dep't of Hum. Servs.*,
   944 N.W.2d (Iowa 2020) ........................................................................................... 8, 9

*Estes Forwarding Worldwide LLC v. Cuellar,*
   239 F. Supp. 3d 918 (E.D. Va. 2017) ................................................................... 27

*Facebook, Inc. v. Power Ventures, Inc.,*
   844 F.3d 1058 (9th Cir. 2016) ............................................................................. 26

*Fant v. City of Ferguson, Missouri,*
   913 F.3d 757 (8th Cir. 2019) ................................................................................. 5

*Gorman v. Easley,*
   257 F.3d 738 (8th Cir. 2001) ............................................................................. 6, 7

*In re Facebook, Inc. Tracking Litig.,*
   956 F.3d 589 (9th Cir. 2020) ........................................................................... 2, 16

*In re Google Assistant Priv. Litig.,*
   546 F. Supp. 3d 945 (N.D. Cal. 2021) ................................................................. 22

*In re Google Asst. Priv. Litig.,*
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................. 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
   806 F.3d 125 (3d Cir. 2015) .......................................................... 2, 17, 20, 21

*Krieger v. Iowa Dep't of Hum. Servs.,*
   439 N.W.2d 200 (Iowa 1989) .............................................................................. 13

*Lee v. State,*
   815 N.W.2d 731 (Iowa 2012) ........................................................................... 9, 10

*Lewis v. Clarke,*
   581 U.S. 155 (2017) ............................................................................................... 8

*Myers v. Iowa Board of Regents,*
   30 F.4th 707 (8th Cir. 2022) ............................................................... 8, 9, 10, 11

*Northland Baptist Church of St. Paul, Minnesota v. Walz,*
   530 F. Supp. 3d 790 (D. Minn. 2021) ................................................................. 14

*Planned Parenthood v. Ctr. for Med. Progress,*
   214 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................... 18, 19

*Poor Bear v. Nesbitt,*
   300 F. Supp. 2d 904 (D. Neb. 2004) .................................................................... 13

*Sherman v. Curators of the Univ. of Missouri,*
  16 F.3d 860 (8th Cir.1994) .................................................................... 8

*Smith v. Facebook,*
  262 F. Supp. 3d 943 (N.D. Cal. 2017) .................................................. 19

*State ex rel. Palmer v. Unisys Corp.,*
  637 N.W.2d 142 (Iowa 2001) ........................................................... 24, 25

*U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,*
  745 F.3d 131 (4th Cir. 2014) .................................................................. 7

*U.S. v. Corona-Chavez,*
  328 F.3d 974 (8th Cir. 2003) ................................................................ 15

*United States v. $30,006.25 in U.S. Currency,*
  236 F.3d 610 (10th Cir. 2000) ................................................................ 9

*United States ex rel. Fields v. Bi–State Dev. Agency of the Missouri–Illinois Metro. Dist.,*
  829 F.3d 598 (8th Cir. 2016) .................................................................. 7

*United States v. Featherly,*
  846 F.3d 237 (7th Cir. 2017) ................................................................ 27

## Statutes

18 U.S.C. § 2511 ..................................................................................... 2

18 U.S.C. § 2511(1) ......................................................................... 14, 21

18 U.S.C. § 2511(1)(a) ......................................................................... 23

18 U.S.C. § 2511(1)(c) ......................................................................... 23

18 U.S.C. § 2511(1)(d) ................................................................ *passim*

18 U.S.C. § 2520 .................................................................................. 22

42 U.S.C. § 1320d-6 ............................................................................ 18

## Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1

## Regulations

45 C.F.R. § 104.508(c)(1) ........................................................................................... 15

45 C.F.R. § 164.508(a)(3)(4) ...................................................................................... 15

**Other Authorities**

Restatement (Third) of Restitution & Unjust Enrichment § 1 ....................................... 26

Restatement (Third) of Restitution & Unjust Enrichment § 44 ..................................... 26

## I.    INTRODUCTION

Plaintiff Eileen Yeisley ("Plaintiff") respectfully submits this memorandum of law in opposition to UIHC University of Iowa Hospitals & Clinics' ("UIHC") motion to dismiss Plaintiff's Class Action Complaint ("Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

UIHC seeks to escape liability for its unlawful practice of surreptitiously installing tracking pixels on its websites with the purpose of collecting, transmitting and ultimately disclosing Plaintiff's and Class Members' confidential personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"). UIHC shared, and continues to share, Plaintiff's Private Information with unauthorized third parties, such as Facebook and Google, for its own financial gain, at the expense of Plaintiff and Class Members.

The lawsuit seeks recovery of damages on behalf of Plaintiff and Class Members, as well as injunctive relief to end UIHC's unlawful practice of collecting and sharing Plaintiff's and Class Members' Private Information without proper authorization or compensation. Specifically, Plaintiff brings claims for UIHC's explicit violation of: Invasion of Privacy (Count I); unjust enrichment (Count II); violations of Electronic Communications Privacy Act (Count III and Count IV); violations of the Electronic Communications Privacy Act (Count V); violation of the Computer Fraud and Abuse Act; and Breach of Confidence (Count VII). *See* Class Action Complaint (ECF No. 1) ("Compl.").

On July 17, 2023, UIHC filed a Motion to Dismiss (ECF No. 18) ("Motion") and its supporting Memorandum of Law (ECF No. 18-1 ("Def. Mem.")). UIHC's Motion relies primarily on the assertions that state sovereign immunity shields it from liability, and that the federal statute

---

[1] At this stage, Plaintiff does not oppose UIHC's Motion insofar as it seeks dismissal of Counts I, IV, V, and VII of the Complaint. Therefore, this memorandum will address only the portions of UIHCs' brief seeking dismissal of Counts II, III, and VI. Plaintiff will pursue any additional claims against UIHC in other venues if warranted.

claims prohibit wholly unrelated acts. *See generally* Def. Mem. For the reasons set forth below, UIHC's Motion should be denied as to Counts II, III, and VI.

First, UIHC asserts that Plaintiff's Complaint should be dismissed in its entirety for lack of subject matter jurisdiction because UIHC, as a state actor, is shielded from Plaintiff's claims under sovereign immunity and the Eleventh Amendment. Def. Mem. at 5–7. UIHC is not entitled to sovereign immunity, however, because (1) it is not an arm of the state; (2) it has waived any sovereign immunity it might otherwise have; and (3) Congress has abrogated sovereign immunity for purposes of Plaintiff's claims under the federal statutes.

Second, UIHC argues it cannot be held liable for any violations of the Wiretap Statutes because it was not a party to the relevant communications, citing 18 U.S.C. § 2511.  Def. Mem., at 17. Courts have historically held defendants, like UIHC, liable under the ECPA for duplicating and forwarding content to third parties. *In re Facebook, Inc. Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015).These acts form actionable interceptions under the Wiretap Statutes. But also, Section 2511(2)(d) is limited to the act of interception, and therefore, fails to exempt UIHC from liability for using content acquired through an interception, as Plaintiff has alleged. *See* 18 U.S.C. § 2511(1)(d); Compl., ¶¶ 34, 35, 59, 72, 102, 113, 137, 189, 193, 195–97, 202, 215. Thus, the party to the communication defense in section 2511(2)(d) does not bar any of Plaintiff's claims.

Third, UIHC claims that Plaintiff fails to allege a plausible claim under the Computer Fraud and Abuse Act ("CFAA") because that Act only prohibits unauthorized access of protected computers, which UIHC claims was not alleged here. Def. Mem. at 19–20. UIHC misapprehends the definition of "computer," as well as the fact that Plaintiff alleges that she did not voluntarily provide the information collected and distributed.

Finally, UIHC argues Plaintiff has not alleged that it would be unjust for UIHC to retain any benefit. Def. Mem. at 15–16. Plaintiff has adequately alleged that it would be unjust for UIHC to receive a benefit from Plaintiff's valuable Private Information, including, *inter alia*, bolstering profits and increasing profit margins from enhanced advertising services and cost-efficient marketing. Compl. at ¶¶ 13, 70, 93, 146, 148, 201.

## II.   BACKGROUND

UIHC violated its patients' and website users' rights by placing hidden tracking pixels on its websites (www.uihealthcare.org), intercepting and procuring the ability of Meta Platforms, Inc. ("Facebook") to intercept Plaintiff's and Class Members' HIPAA protected communications, and surreptitiously transmit the contents of those communications to Facebook through the Meta Pixel ("Pixel") for its own commercial purposes and financial gain. Compl. ¶¶ 1–8. UIHC manages or controls two websites which it encourages individuals to use for, *inter alia*, booking medical appointments, locating physicians and treatment facilities, communicating medical symptoms, searching medical conditions and treatment options, and signing up for events and classes. *Id.* ¶ 2.

As a covered healthcare entity under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), UIHC knows the critical importance of safeguarding Plaintiff's and Class Members' sensitive information, and its duty to protect such Private Information it obtains from disclosure to unauthorized third parties. *Id.* ¶ 40, 111, 113, 130. On its website, UIHC states that it is committed to protecting patients' information and not disclosing it to unauthorized third parties, in addition to Iowa's strong public policy of protecting the privacy of individuals' health information. *Id.* ¶ 104, 112, 126–128. In fact, the federal laws that require the protection of medical information, UIHC's own policies, along with the universal tenet that medical facilities are required to maintain confidentiality of patient health information, gave Plaintiff and Class

Members a reasonable expectation of privacy of their protected health information. *Id.* ¶ 104, 135–136,

Moreover, the Office for Civil Rights ("OCR") at the U.S. Department of Health and Human Services ("HHS") recently issued a bulletin highlighting the obligations of HIPAA covered entities that implement online tracking technologies like Facebook Pixel. Compl. ¶ 119. The HHS bulletin makes clear that regulated entities such as UIHC "are not permitted to use tracking technologies" that would "result in impermissible disclosures of PHI to tracking technology vendors or any other violations of HIPAA Rules." *Id.* ¶ 120. Recognizing the high proliferation of tracking technology used by covered entities in today's business environment, the OCR has found it critical for regulated entities to protect patient PHI and disclose "only as expressly permitted or required by the HIPAA Privacy Rule." *Id.* ¶ 122.

Despite the warnings of the HHS bulletin, as well as the ongoing requirements of a covered entity under HIPAA to protect Private Information, UIHC has instead chosen to continue to install and implement the pixel tracking technology on its websites, which "secretly enables the unauthorized transmission and disclosure of Plaintiff and Class Members' PII and PHI as they are communicated to UIHC." *Id.* ¶¶ 3, 5, 76, 81. UIHC's website continues to automatically direct Plaintiff's and Class Members' Private Information to unauthorized third parties, such as Facebook and Google. *Id.* ¶ 6, 7, 8, 42, 49, 105 n.25.

UIHC has secretly implemented the tracking Pixel on its websites for marketing efficiency purposes, to increase margins and bolster its profitability. *Id.* ¶¶ 13, 50, 70, 145, 201. The Pixel in UIHC's website allows it to "optimize the delivery of ads, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs." *Id.* ¶ 83. Thus, UIHC has chosen to maximize profits instead of protecting Plaintiff's and Class Members' Private

Information in violation of HIPAA and HHS bulletin guidance. *Id.* ¶ 50.

Plaintiff and Class Members never consented to having their Private Information transmitted to Facebook or Google and potentially other unauthorized third parties. *Id.* ¶¶ 32, 41, 213. Moreover, Plaintiff's and Class Members' data is valuable, and its unauthorized disclosure creates a substantial risk of harm. *Id.* ¶¶ 256 vi–viii. These facts, as alleged by Plaintiff, plausibly support her claims. Accordingly, UIHC's Motion should be denied.

## III.   UIHC is Not Immune from Plaintiff's Claims.

### A.  UIHC is Not the State of Iowa.

All of UIHC's arguments pertaining to sovereign immunity focus on the extent to which that immunity has or has not been waived or abrogated. *E.g.*, Def. Mem., at 6 ("[N]either the State nor Congress has withdrawn UIHC's sovereign immunity from Yeisley's claims, so this suit must be dismissed for lack of subject matter jurisdiction."). All of Defendant's sovereign immunity arguments share a consistent critical flaw: presuming, without substantiating, that UIHC enjoys the State of Iowa's immunity in the first place. But Plaintiff did not name the State of Iowa in her Complaint.

"Sovereign immunity protects certain entities against the indignity of suit and the burdens of litigation . . . ." *Fant v. City of Ferguson, Missouri*, 913 F.3d 757, 759 (8th Cir. 2019). "Certain entities" includes "states and arms of the state." *Gorman v. Easley*, 257 F.3d 738, 743 (8th Cir. 2001), *reversed in part on other grounds*, *Barnes v. Gorman*, 536 U.S. 181 (2002).

"Whether an entity constitutes such an 'arm' turns on its relationship to the state under state law." *Id.* The burden rests with the entity to show that it is entitled to sovereign immunity as an arm of the state. *United States ex rel. Fields v. Bi–State Dev. Agency of the Missouri–Illinois Metro. Dist.*, 829 F.3d 598, 600 (8th Cir. 2016). Indeed, circuits have "uniformly concluded" that

"arm-of-state" status is an affirmative defense. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 147 (4th Cir. 2014) (Traxler, J., concurring in part) (collecting cases). The only reference UIHC makes pertaining to its relationship to the State of Iowa is the conclusory assertion that "UIHC is an instrumentality of the State of Iowa." Def. Mem., at 3. This single sentence does not satisfy UIHC's burden to show it is an arm of the state. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("[C]ourts may not simply rely on the characterization of the parties in the complaint but rather must determine in the first instance whether the remedy sought is truly against the sovereign."). And UIHC will be unable to meet that burden on reply.

UIHC will likely point to the line of cases concluding that state universities are arms of the state. However, "[t]he fact that an overwhelming majority of state universities possess eleventh amendment immunity does not control the outcome . . . . Each state university claiming eleventh amendment immunity must be considered on the basis of its own particular circumstances." *Sherman v. Curators of the Univ. of Missouri*, 16 F.3d 860, 863 (8th Cir.1994) (quotes omitted).

### B.  Even if UIHC is Entitled to Sovereign Immunity, it Has Been Waived.

UIHC is operated and managed by the Iowa Board of Regents. In *Myers v. Iowa Board of Regents*, the Eighth Circuit found that the Board of Regents (the "Board") is, generally, entitled to sovereign immunity. 30 F.4th 707 (8th Cir. 2022). As an initial matter, this does not mean that UIHC necessarily enjoys the Board's immunity. *See id.* at 710 (noting that because the University of Iowa system is subordinate to the Board, it "*may* benefit from the Board's immunity *at times*" (emphasis added)). Even if this immunity could be said to extend to UIHC in this case, however, it has been constructively waived.

"Iowa courts have retained the doctrine of constructive waiver," of sovereign immunity, which is "based on the public policy that it would be abhorrent to permit the State to enter into

contracts with no corresponding obligation to perform its promises under the contract." *Id*. at 709

(quoting *Lee v. State*, 815 N.W.2d 731, 741 (Iowa 2012)). The state need not enter into an

enforceable contract to constructively waive its immunity. *Lee*, 815 N.W.2d at 742 ("[I]n addition

to conduct by the State in entering into a contract, other conduct of the State can give rise to

constructive waiver of immunity.").

In *State v. Dvorak*, the Iowa Supreme Court held that, by obtaining land, the State adopted

"those obligations and duties incident to land ownership" and waived its sovereign immunity as to

claims that it violated fencing codes. 261 N.W.2d 486, 489 (Iowa 1978). The Iowa Supreme Court

has also noted that "provisions contained in state employee handbooks can support constructive

waiver of sovereign immunity." *Lee*, 815 N.W.2d at 742 (citing *Anderson v. Douglas & Lomason

Co*., 540 N.W.2d 277, 283 (Iowa 1995)).

Most notably, in *Myers v. Iowa Board of Regents*, this District denied summary judgment

to the Iowa Board of Regents, reasoning that it had constructively waived its sovereign immunity

as to claims under the Fair Labor and Standards Act ("FLSA") in part because UIHC had

maintained an operations manual, employee manual, employee handbook, and human resources

website that referenced or incorporated the FLSA. 30 F.4th at 709. While the Eighth Circuit

remanded the case, this was only so the district court could, in the first instance, consider whether

the waiver of immunity implicated by UIHC's materials "can be imputed to the Board," because

constructive waiver "centers on voluntary acceptance of legal consequences" and UIHC cannot

accept consequences on behalf of the Board. *Id.* at 710. There is no such issue here.

Plaintiff named UIHC as the Defendant in this case. UIHC's Privacy policy promises that

its visitors' "information will not be sold, traded, or otherwise made public;" and that it tracks

"visitor preferences, such as which pages are visited in what order, where users come from, and

how long users spend on our web site," but that it "never associate[s] any such information with specific identities."[2] This is precisely what Plaintiff alleges UIHC has done. Plaintiff further alleges that UIHC's policies promise to only disclose visitors' PII lawfully and in certain circumstances—none of which include for marketing purposes. Compl. at ¶¶ 112–114. Yet, as Plaintiff alleges, they illegally disclosed Plaintiff and Class Members' PII for marketing purposes. Accordingly, UIHC has waived its sovereign immunity as to claims relating to its profiting from illegal disclosure of Plaintiff's information.

### C. Unjust Enrichment

UIHC also suggests that the Eleventh Amendment somehow offers it special sovereign immunity protections from unjust enrichment claims. Assuming, *arguendo*, UIHC was entitled to sovereign immunity as an arm of the state, this is simply untrue. "[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms." *Alden v. Maine*, 527 U.S. 706, 729 (1999) (quotation omitted).

UIHC relies on a dissenting opinion in *Endress v. Iowa Dep't of Hum. Servs.*, 944 N.W.2d 7 (Iowa 2020).[3] *Endress* involved, among other issues, whether unjust enrichment could be a defense to the Iowa DHS's attempt to recoup payments made to a childcare provider for services she provided while the cancellation of her provider agreement was on appeal. The plurality opinion held that it could, remanding the case to DHS "so that it may fully consider Endress's unjust

---

[2] https://uihealthcare.org/privacy-policy

[3] UIHC cites to Justice McDonald's "concurrence." Def. Mem., at 8. However, Justice McDonald "concur[red] in part and dissent[ed] in part." *Id.* at 91 (McDonald, J., concurring in part and dissenting in part). Justice McDonald's discussion of sovereign immunity—the discussion on which UIHC relies—was in the dissenting, not concurring, portion of his opinion: "However, I *disagree* Endress can assert a defense of unjust enrichment in response to DHS's effort to enforce a valid law, and I dissent on this issue." *Id.* (emphasis added).

enrichment claim as an offset against DHS's claim for recoupment." *Id.* at 81. The plurality did not address sovereign immunity, thus impliedly rejecting it as a defense to an unjust enrichment claim against the state. (Similarly, neither of the cases involving unjust enrichment claims against state agencies upon which the plurality relied found that sovereign immunity bars such claims. *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Hum. Servs.*, 613 N.W.2d 674 (Iowa 2000); *Krieger v. Iowa Dep't of Hum. Servs.*, 439 N.W.2d 200 (Iowa 1989)). The *Endress* dissent, which opined that sovereign immunity should bar unjust enrichment claims against the state, obviously does not bind this Court.

Likewise, the discussion of unjust enrichment in *United States v. $30,006.25 in U.S. Currency* took place in the context of federal sovereign immunity, and is inapplicable in light of the plurality opinion in *Endress*. 236 F.3d 610, 614 (10th Cir. 2000).

UIHC has not offered any authority, other than a single dissenting opinion,[4] for the proposition that Plaintiff's unjust enrichment claim is barred by special considerations of the Eleventh Amendment. *Northland Baptist Church of St. Paul, Minnesota v. Walz*, 530 F. Supp. 3d 790, 802 (D. Minn. 2021) ("The burden rests with the entity asserting Eleventh Amendment sovereign immunity to show its entitlement to such immunity."). The Court should therefore reject UIHC's sovereign immunity argument.

---

[4] UIHC also cites *Poor Bear v. Nesbitt* for the proposition that "'[t]he Eleventh Amendment bars [a plaintiff's] claims against . . . State defendants' in federal court for 'unjust enrichment in their entirety.'" Def. Mem., at 8 (alterations in original) (quoting *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 915 (D. Neb. 2004)). UIHC creatively edits the language of that opinion to suggest that it announced a bright-line rule for unjust enrichment claims. It did not. The *Poor Bear* court held that *that* plaintiff's claims were barred "in their entirety" because *that* plaintiff alleged that state officials violated state law. 300 F. Supp. 2d at 915. Even if UIHC could substantiate its assertion that unjust enrichment claims "generally" allege violation of state law, that does not change the fact that the unjust enrichment claim *here* alleges violation of federal law.

**IV.    Plaintiff Sufficiently Alleges that UIHC was a Party to the Relevant Communications.**

UIHC attempts to evade its liability under 18 U.S.C. § 2511(1) by asserting that its conduct falls within the 18 U.S.C. § 2511(2)(d) exemption for parties to a communication (the "Party Defense"). Def. Br. at 17. The relevant section of the Party Defense provides two exemptions from liability: (1) where the entity is a party to the communication,[5] and (2) where one of the parties to the communication has given prior consent.[6] 18 U.S.C. § 2511(2)(d). Notably, UIHC improperly raises this defense in its Motion to Dismiss, and the Court should deny it as premature. *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) ("Complaints need not anticipate or attempt to defuse potential defenses . . . the defense of single-party consent has limits.").

Dispositively, though, asserting the Party Defense here ignores the nature of Plaintiff's allegations, that UIHC is a healthcare provider intercepting, disclosing, and improperly using *private, personally identifiable medical information.* Compl., ¶¶ 1, 7, 8, 20–21. The Party Defense does not insulate UIHC from liability under the ECPA because (1) UIHC duplicated and forwarded Plaintiff's communications to Meta, (2) parties to a communication are still liable under the ECPA if the "communication is intercepted for the purpose of committing any criminal or tortious act"

---

[5] To the extent UIHC argues that it also consented to Meta's interception of Plaintiff's electronic communications, this argument is a catch-22 and fact-intensive issue. Consent to the interceptions at issue, which involve the disclosure of federally protected medical and personal identifying information, are violations of HIPAA, which requires full consent from Plaintiff and adherence to 45 C.F.R. § 104.508(c)(1) and 45 C.F.R. § 164.508(a)(3)(4), and also includes a provision for criminal liability. "Consenting" on behalf of Plaintiff, without Plaintiff's actual consent, would make UIHC liable under the Crime-Tort Exception to the Party Defense.

[6] UIHC does not assert whether it "consented" to Meta's interception of Plaintiff's and the Class Members' Private Information, nor could it ever lawfully provide that consent. UIHC only argues that "if it is a party itself doing the intercepting, it has … consented to its own actions." Def. Br. At 17. UIHC cites *U.S. v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) for this point, but this case is inapposite because it was a criminal case involving law enforcement where consent was implied for an individual that agreed to allow law enforcement to listen to the conversation. *Id.* at 977-78.

("Crime-Tort Exception"), as is the case here, and (3) UIHC violated 18 U.S.C. § 2511(1)(d) (the "Use Provision"), which is outside the scope of the Party Defense. For these reasons, Count III of Plaintiff's Complaint survives.

### A. UIHC Violated the ECPA by Secretly Duplicating and Forwarding Communications.

Circuit Courts of Appeals have confirmed that valid wiretap claims are presented where the intended recipient "permit[ed] an entity to engage in the unauthorized duplication and forwarding of unknowing users' information." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). The conduct described in the Complaint falls squarely within the rule articulated in *Facebook Internet Tracking*—the only difference being that UIHC procured Meta to intercept, which creates the same liability under the Wiretap Statute.[7] As alleged, UIHC embedded Pixel on its website, which caused the unauthorized duplication and redirection of the website's users' Private Information to Meta without the users' knowledge or consent. Compl., ¶¶ 7, 21, 23, 25. In turn, the Party Defense does not apply here.

### B. The Crime-Tort Exception Applies to UIHC's Party Defense.

UIHC's conduct also falls within the Crime-Tort Exception to the Party Defense found in 18 U.S.C. § 2511(2)(d). To assert the Crime-Tort Exception, Plaintiff need only plead "sufficient facts to support an inference that the offender intercepted the communication [or caused the communication to be intercepted] for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015).

---

[7] UIHC also made no, and waived any, defense to Plaintiff's allegation that it procured Meta to intercept Plaintiff's communications. Compl., ¶¶ 70, 195. The Party Defense is limited to intercepting and does not exempt persons that procure another to intercept, like UIHC has done here.

Criminal or tortious purposes may include "invading [a plaintiff's] privacy . . . defrauding her, or . . . committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc*., 121 F.3d 460, 467, n.4 (9th Cir. 1997); *see also Brown v. Google*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (intrusion upon seclusion, invasion of privacy, and other violations); *Planned Parenthood v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (recognizing "further invading the privacy of plaintiffs' staff" sufficed to state crime-tort exception to consent). Here, Plaintiff alleges UIHC intercepted and procured Meta to intercept Plaintiff's electronic communications for the purpose of: (1) criminally violating HIPAA by subverting the consent required to disclose Private Information, 42 U.S.C. § 1320d-6;[8, 9] and (2) tortiously invading the privacy of Plaintiff and the Class Members. *See Planned Parenthood*, 214 F. Supp. 3d at 828 (holding that "defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the exception). Here, it cannot be disputed that UIHC wiretapped patients for the purpose of providing information to Meta to later use for targeted marketing. Compl., ¶¶ 13, 145, 174. Indeed, the entire purpose for deploying the tracking tools is to transmit patient communications and PHI back to third parties so that third parties can better target advertisments.

UIHC also knew Pixel was not some innocuous website technology it could simply benefit

---

[8] "[C]overed entities . . . may be prosecuted directly under 42 U.S.C. § 1320d-6" and "the 'knowingly' element of the offense set forth in that provision requires only proof of knowledge of the facts that constitute the offense." www.justice.gov/sites/default/files/olc/opinions/attachments/2014/11/17/-hipaa_final.htm.

[9] *See Doe v. Meta*, 2022 WL 17869218, at *8-9 (N.D. Cal. Dec. 21, 2022) (finding that HIPAA protects patient-status, rejecting application of *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017) and finding that "Meta has not established consent to the conduct at issue."); Compl., ¶ 87 (" UIHC's Pixel and Conversions API sent … Plaintiff's and Class Members' … status as medical patients" to Facebook.)

from without consequence. Recent Human Health Services guidance states:

> Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

Compl. ¶ 120 This government dictate was aimed squarely at health care entities such as UIHC, and UIHC has instead choose to ignored it.

Plaintiff's allegations that UIHC used patient data for advertising in violation of § 2511(2)(d) are more than acceptable at the pleading stage to evince that "plaintiffs may be able to show that the crime-tort exception applies," particularly given "state court decisions establishing that tort claims may lie against health care providers over their use of Pixel." *Meta Pixel Healthcare*, 2022 WL 17869218, at *12 (denying "extraordinary remedy" of preliminary injunction, but assuring "[o]f course, this claim will present differently in a motion to dismiss context" *id.* at *13); *Google Inc. Cookie Placement*, 806 F.3d at 145 (holding "all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits."). Therefore, the Crime-Tort exception applies and UIHC is ineligible to invoke the Party Defense.

### C.  UIHC violated § 2511(1)(d) of the ECPA, and the Party Defense Does Not Apply to that Violation.

Squarely relevant here is the "Use Provision" of the ECPA, § 2511(1)(d), which prohibits:

> Intentionally us[ing], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.

Plaintiff's Complaint alleges that UIHC violated every letter of this statutory provision. Indeed,

UIHC is liable under subsection 2511(1)(d), because: (1) Meta intercepted Plaintiff's communications,[10] (2) Meta's interception of Plaintiff's communications was unlawful because Meta was not a party to the communication and it did not have proper consent to intercept,[11] (3) UIHC used the contents of Meta's interceptions,[12] (4) UIHC's use was intentional,[13] and (5) UIHC knew Meta's interceptions were unlawful because it procured Meta to do it, but used the contents from them anyway, for its own commercial benefit. Taken together, Plaintiff has sufficiently alleged UIHC violated the Use Provision, 18 U.S.C. § 2511(1)(d).

18 U.S.C. § 2520 makes actionable the "intercept[ion], disclos[ure] *or* use[]" of intercepted communications. *Id.* (emphasis added). This is broader than the Party Defense, which *only* exempts persons who "intercept" communications. 18 U.S.C. § 2511(2)(d). Indeed, courts have recognized two distinct interests served by the Wiretap Statute, articulated by distinct provisions of the statutes. One is "to protect effectively the privacy of wire and oral communications." *Boehner v. McDermott*, 484 F.3d 573, 583 (D.C. Cir. 2007) (Sentelle, dissenting) (*citing Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001)). This interest is served by the statutory prohibition on interceptions. 18 U.S.C. § 2511(1)(a). The second interest is to "minimize[e] the harm to persons whose conversations have been illegally intercepted," which is served by prohibiting further use and

---

[10] *See Meta Pixel Healthcare*, 2022 WL 17869218, at *18 (finding Pixel surreptitiously and contemporaneously intercepts communications on third-party websites).

[11] *See id.* (requiring an actionable interception under § 2511(1)); *see generally Google Inc. Cookie Placement*, 806 F.3d at 142–43 (finding a party to a communication is the intended recipient).

[12] *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 960 (N.D. Cal. 2021) (finding targeted advertisements are an example of "use" under § 2511(1)(d)).

[13] *See In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) ("[K]nowingly allow[ing] the defect to recur . . . foreclose[s]" a defense of "inadvertence or mistake").

disclosure. *Id.*; *see also* 18 U.S.C. § 2511(1)(c), (d).

Here, UIHC procured Meta to intercept Plaintiff's communications (an act outside the scope of the Party Defense by its own accord) and later used the fruits from those unlawful interceptions for its own commercial benefit. To hold the Party Defense applies to this conduct would negate the second and distinct purpose of the Wiretap Statute, which strategically applies to conduct after unlawful interception. Thus, no Party Defense applies to UIHC's violations of 18 U.S.C. § 2511(1)(d), and Plaintiff's Wiretap Claim should proceed.

## V.   Plaintiff Has Stated a Plausible Claim for Unjust Enrichment.

UIHC argues that "Yeisley fails to plead facts establishing that it would be unjust for UIHC to retain any benefit here," and as such, "Yeisley's unjust enrichment claims [should be dismissed.]" Def. Memo. at 16. Contrary to UIHC's assertion, Plaintiff has alleged that she "conferred a benefit upon UIHC in the form of Private Information that UIHC collected from Plaintiff and Class Members, without authorization and proper compensation. Compl. ¶ 183.

Plaintiff's claim of unjust enrichment (Count II) is "rooted in the principle that one party should not be unjustly enriched at the expense of another party." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55 (Iowa 2001) (recognizing that "unjust enrichment is a broad principle with few limitations"). To state a claim for unjust enrichment, plaintiff must allege: "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019). The principle of unjust enrichment is "well engrained into [Iowa] law." *Unisys Corp.*, 637 N.W.2d at 154, n. 1. ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other." (citation omitted)). Indeed, the critical issue is the determination "that the benefit received be at the expense of the plaintiff[s]." *Id.* at 155. The

15

*focus should be on the wrongful gain of UIHC* and not the loss incurred by the Plaintiff. *Id.* at 154 (emphasis added). Moreover, contrary to UIHC's assertion, a claim for unjust enrichment, "can stand on its own as an open-ended, broad theory of restitution." *Id.* at 150.[14]

Plaintiff has alleged that UIHC has been enriched through its wrongful acts by increasing profits and bolstering its margins, Compl. ¶¶ 13, 50, 70, 183, 201, with the "sole purpose of the use of Facebook Pixel on UIHC's website" focused at "marketing and profits," *id.* ¶ 145, to create "enhanced advertising services and more cost-efficient marketing on its platform." *Id.* at ¶ 146. The use of Plaintiff's Private Information without her knowledge or consent was executed at the expense of Plaintiff, whose information holds independent extrinsic value in the marketplace. Compl. ¶ 256 (vi–viii.). Thus, UIHC has benefited from retaining and leveraging Plaintiff's Personal Information "without authorization and proper compensation." *Id.* ¶ 183.

Plaintiff has sufficiently stated a claim for unjust enrichment and UIHC should not be able to retain such benefit at Plaintiff's expense without proper authorization or just compensation.

## VI.   Plaintiff Has Stated a Plausible Claim Under the CFAA.

The CFAA was enacted to "prohibit acts of computer trespass by those who are not authorized or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016) (emphasis added). In the instant case, UIHC misapprehends the issue of fact as to what access was authorized and the concept of what is a protected computer.

As a predicate matter, to succeed on a claim for a violation of the CFAA Plaintiff needs to allege UIHC (1) intentionally, (2) accessed a computer, (3) without authorization or in such a way exceeded authorized access, (4) and obtained information, (5) from any "protected computer," (6)

---

[14] UIHC cites to the Restatement (Third) of Restitution & Unjust Enrichment § 44 for the proposition that Plaintiff's unjust enrichment claim fails under Iowa law. Def. Mem. at 16. But "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." *See* Restatement (Third) of Restitution & Unjust Enrichment § 1.

resulting in a loss to one or more persons during any one-year period aggregating at least $5,000 in value. *Abu v. Dickson*, Civil Case No. 20-10747, 2021 U.S. Dist. LEXIS 52778, at *12 (E.D. Mich., Mar. 22, 2021) (citing *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 922-23 (E.D. Va. 2017)).

Under the CFAA a computer is interpreted as more than just physical hardware. Indeed, courts have interpreted the definition of computer under the Act to be very broad to include devices that operate in conjunction with a computer to enable communication over the internet. *United States v. Featherly*, 846 F.3d 237, 240 (7th Cir. 2017). Courts have further said that the definition of computer is so broad that it can include cell phones. *ACW Flex Pack LLC v. Wrobel*, Case No. 22-cv-6858, 2023 U.S. Dist. LEXIS 128580, at *16 (N.D. Ill. Jul. 26, 2023) (internal citations omitted). Further, a protected computer, as defined by the Act, has also been given a broad interpretation to include any computer as defined by the Act which is used in or affecting interstate or foreign commerce or communication. *Id.*

Here, and contrary to the arguments of UIHC, Plaintiff has alleged that when Plaintiff visited UIHC's website for the purpose of obtaining healthcare services, UIHC, without authorization, entered or accessed her computer and placed a tracking pixel, or cookie on it for the purposes of accessing her personal information and communications. Plaintiff has alleged that this tracking pixel accessed her information without her knowledge or authorization. *See Compl.* ¶¶ 3–5, 11–13, 23-25, 57–58, 76–80. Accordingly, UIHC intentionally accessed Plaintiff's protected computer and without authorization took information of value. It is a red herring to argue that Plaintiff voluntarily provided information to them. Indeed, it is an issue of fact as to the scope and breadth of specific protected information UIHC took through its tracking pixel and Conversion API programs.

Similarly, UIHC's arguments that CFAA does not cover acts of misappropriation is further unavailing. As argued above, Plaintiff alleges that UIHC was not authorized to enter her computer and take personal and private information through a tracking pixel. Accordingly, Plaintiff has stated a valid claim under the CFAA.

## VII. CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that UIHC's Motion to Dismiss be denied as to Counts II, III, and VI.


Dated:    August 21, 2023                              Respectfully Submitted,

                                                       */s/ Brian O. Marty*
                                                       Brian O. Marty
                                                       **SHINDLER, ANDERSON, GOPLERUD**
                                                       **& WEESE P.C.**
                                                       5015 Grand Ridge Drive, Suite 100
                                                       West Des Moines, IA 50265
                                                       Tel: (515) 223-4567
                                                       Fax: (515) 223-8887
                                                       marty@sagwlaw.com

                                                       */s/ J. Barton Goplerud*
                                                       J. Barton Goplerud
                                                       **SHINDLER, ANDERSON, GOPLERUD**
                                                       **& WEESE P.C.**
                                                       5015 Grand Ridge Drive, Suite 100
                                                       West Des Moines, IA 50265
                                                       Tel: (515) 223-4567
                                                       Fax: (515) 223-8887
                                                       goplerud@sagwlaw.com

                                                       Daniel E. Gustafson
                                                       David A. Goodwin
                                                       Joseph E. Nelson
                                                       **GUSTAFSON GLUEK PLLC**
                                                       Canadian Pacific Plaza
                                                       120 South 6th Street, Suite 2600
                                                       Minneapolis, MN 55402
                                                       Telephone: (612) 333-8844

dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
jnelson@gustafsongluek.com

Brian C. Gudmundson
Hart L. Robinovitch
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
hart.robinovitch@zimmreed.com

Nathan D. Prosser
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Phone: (952) 522-4291
nprosser@hjlawfirm.com

Aaron N. Halstead
Aaron J. Bibb
**HAWKS QUINDEL S.C.**
409 East Main Street
Madison, WI 53703
Phone: (608) 257-0040
ahalstead@hq-law.com
abibb@hq-law.com

Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Suite 302
Washington, D.C. 20002
Phone: (202) 470-3520
nmigliaccio@classlawdc.com

Scott David Hirsch
**SCOTT HIRSCH LAW GROUP PLLC**
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
scott@scotthirschlawgroup.com

*Attorneys for Plaintiff and Class Members*

19

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Brian O. Marty_____