IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| EILEEN YEISLEY, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF IOWA HOSPITALS & CLINICS,<br><br>    Defendant. | Case No. 3:23-cv-00025-SHL-HCA<br><br>**REPLY TO RESISTANCE TO MOTION TO DISMISS** |

### I. Sovereign immunity bars this suit.

Yeisley's bid to privatize the State of Iowa's flagship university is a matter for the electorate, not this suit. The Iowa Constitution created the University of Iowa. Iowa Const. art. IX, § 11; art. XI, § 8. The State Board of Regents is an Executive Branch agency tasked with operating "[t]he state university of Iowa, including the university of Iowa hospitals and clinics." Iowa Code § 262.7. The University of Iowa Hospitals & Clinics (UIHC) serves its public purpose by not only providing education to medical students, but also critical health services to the public. *See, e.g.*, Iowa Code §§ 263.18–.23. Yeisley's argument that UIHC is not an arm of the State is unfounded.[1] *See Myers v. Iowa Bd. of Regents*, 30 F.4th 705, 707 (8th Cir. 2022); *Brine v. Univ. of Iowa*, 90 F.3d 271, 275 (8th Cir. 1996).

Yeisley next argues that even if UIHC is an arm of the State, UIHC nevertheless waived immunity by including certain language on its website. Yet Yeisley misunderstands constructive waivers. Immunity can be constructively waived when the State enters "voluntarily created legal relationships with private citizens that subject[] it to liability." *Lee v. State*, 815 N.W.2d 731, 738

---

[1] Yeisley's Resistance offers no authority or substantive argument to show that either the FWA or CFAA abrogated state sovereign immunity, waiving the issue. *Tate v. Scheidt*, No. 15-3115, 2016 WL 7155806, at *6 (D. Minn. Oct. 7, 2016) (explaining a "party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues" and collecting cases). So the issue of sovereign immunity rises and falls with whether the UIHC is an arm of the State. Because it is, the Eleventh Amendment bars the claims.

(Iowa 2012).[2] So when the State buys land or enters into a contract, it is liable for duties incident to landownership or for breach of contract. *State v. Dvorak*, 261 N.W.2d 486, 489 (Iowa 1978). But constructive waiver requires finding both voluntariness and intent to assume the specific legal consequences raised by the plaintiff. *Lee*, 815 N.W.2d at 742. Thus, even if a handbook (or website terms) could give rise to an enforceable contract, immunity is only waived over the specific legal consequences of that conduct—a breach-of-contract claim. *Id.*

If Yeisley believed UIHC's website created enforceable promises with all visitors, such that a contract was created, then she should have brought a breach-of-contract claim. She did not. Yeisley's only claims are unjust enrichment, a Federal Wiretap Act (FWA) claim, and a Computer Fraud and Abuse Act (CFAA) claim. *See* Doc. 21 ("Opp."), at 1 n.1. UIHC's website language does not evince an intentional and voluntary agreement to be sued in federal court for unjust enrichment, under the FWA, or under the CFAA. So Yeisley's constructive-waiver argument fails.

Finally, UIHC has not consented to be sued in federal court for unjust enrichment, a state-law claim. Yeisley counters that her unjust enrichment claim is based on federal law. *But see United States ex rel. Goodman v. Arriva Medical, LLC*, 2020 WL 1433861, at *8 (M.D. Tenn. 2020) (discussing limited scope of federal unjust enrichment cause of action). Yet Yeisley points to nothing in the FWA or CFAA abrogating state immunity in federal court for unjust enrichment. Absent abrogation or consent, neither of which is present here, the Eleventh Amendment requires dismissal. *See Davis v. Univ. of N.C. at Greensboro*, 2020 WL 5803238, at *4–5 (M.D.N.C. 2020).

---

[2] UIHC disputes that federal courts could ever exercise jurisdiction based on constructive waiver. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680–82 (1999). While *Iowa* courts have exercised jurisdiction over the State based on constructive waiver, it does not follow that a *federal* court can likewise exercise jurisdiction over the State based on constructive waiver. The interests are distinct. *Lee*, 815 N.W.2d at 741. To the extent *Myers v. Iowa Bd. of Regents* implied otherwise, it was in error. 30 F. 4th at 709. Still, this Court need not reach this issue because UIHC has not constructively waived its immunity.

## II. Yeisley's claims fail on the merits.

### A. Count III fails because UIHC is not a proper defendant and was a party to the communication.

UIHC's Motion explained that "State agencies like UIHC are not proper defendants" who may be sued under the FWA. Doc. 18-1 ("Mot."), 16. By "failing to respond to th[is] portion" of UIHC's Motion, Yeisley has "waive[d] [the] argument[]." *Pratt v. Helms*, 73 F.4th 592, 595 (8th Cir. 2023). For this reason alone, her FWA claim fails.

What's more, Yeisley concedes that the FWA "provides [an] exemption[] from liability . . . where [as here] the [defendant] is a party to the communication." Opp. 10. Nevertheless, Yeisley suggests that the party exception does not apply to UIHC, because it "'permitted an entity to engage in the unauthorized duplication and forwarding of unknowing users' information.'" *Id.* at 11 (citing *In re Facebook, Inc.*, 956 F.3d 589, 607 (9th Cir. 2020)). But Yeisley misreads *In re Facebook*, which merely held that a surreptitious entity is not a party to a communication under the FWA. 956 F.3d at 608. Had Yeisley sued *Meta*, Meta could not avail itself of the party exception because the parties to the communication were Yeisley and UIHC (though it could still argue it was *authorized* by a party). But Yeisley sued UIHC, who is indisputably a party to the communication and thus exempt from FWA liability.[3]

Yeisley fares no better with her argument that this case qualifies for the "crime-tort exception," to the FWA's party exception. As explained by the case that Yeisley herself relies on,

---

[3] Yeisley's passing assertion that it is premature to dismiss an FWA claim based on the party exception, *see* Opp. 10, is directly refuted by the many cases cited in UIHC's Motion to Dismiss doing just that. *See* Mot., 17 (collecting cases). The sole case that Yeisley cites as supposedly coming out the other way was decided under a no-longer applicable, pre-*Twombly* understanding of the motion-to-dismiss standard. *Compare Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("[P]leadings in federal court need not allege facts corresponding to each 'element' of a [claim]."), *cited at* Opp. 10, *with Brown v. Simmons*, 478 F.3d 922, 923-24 (8th Cir. 2007) ("Because [plaintiff] did not allege each element of his . . . claim, [he] failed to state a claim upon which relief can be granted.").

"the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. 2022), *cited at* Opp. 13. Here, Yeisley's theory is that UIHC installed the Pixel "for the purpose of . . . targeted marketing," Opp. 12—exactly the kind of conduct for which courts have held the crime-fraud exception not to apply. *See Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

Finally, Yeisley insists that the party exception categorically "does not apply" to alleged violations of 18 U.S.C. § 2511(1)(d). Opp. 13. But § 2511(1)(d) only prohibits the "use" of information "obtained . . . in violation of this subsection." The party exception states that "it shall not be unlawful . . . to intercept a . . . communication where such person is a party to the communication." 28 U.S.C. § 2511(2)(d). Under that plain text, any interception by a party is not "in violation of" § 2511 at all—meaning that § 2511(1)(d) imposes no restrictions on its use.

**B. Count VI fails because UIHC accessed only information that Yeisley willingly provided to it.**

Yeisley agrees that to state a claim under the CFAA, she must plead facts showing that UIHC accessed a "protected computer[]." 18 U.S.C. § 1030(e)(2)(B). And she does not dispute, *see* Opp. 16–18, that this means she must allege that UIHC "'obtained information from particular areas in her computer—such as files, folders, or databases—to which its computer access does not extend.'" Mot., 19 (quoting *HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022)). Yeisley says she has satisfied that requirement by alleging that UIHC "entered or accessed her computer and placed a tracking pixel." Opp. 17. But her Complaint says the opposite—alleging that UIHC "installed and implemented the Facebook Tracking Pixel [not on Yeisley's computer, but] on its [own] Website," Compl. ¶ 3; *see also id.* ¶¶ 6, 49, 57, 81, 174. The Complaint likewise states that it was "Plaintiff [who] accessed Defendant's Website," Compl. ¶ 39, and "provided

4

[her] Information" to Defendant there, Compl. ¶ 25—not UIHC who accessed Yeisley's computer. Yeisley's own allegations thus run directly contrary to her Resistance, and defeat her CFAA claim.

Yeisley also concedes that her CFAA claim independently fails if she does not show that UIHC acted "without authorization." Opp. 16. Yeisley insists that she "alleged that th[e] tracking pixel accessed her information without her knowledge or authorization." Opp. 17. But Yeisley simply ignores that she authorized exactly that when she agreed to Facebook's Terms of Service. *See Lloyd v. Facebook, Inc.*, No. 21-cv-10075, 2022 WL 4913347, at *10 (N.D. Cal. 2022) (holding that a plaintiff's assent to the Facebook Terms means "there [is] no reasonable expectation of privacy" against data being shared with Facebook).

### C. Count II fails because UIHC was not unjustly enriched.

Finally, Yeisley's derivative unjust enrichment claim fails because she has not shown that UIHC received any benefit to which she has a right. In fact, the only benefit she identifies UIHC as having received from its use of the pixel was an ability to advertise more effectively. Opp. 16. But it is unclear how such an intangible benefit could possibly be disgorged to her through "restitution"—the remedy available for an unjust enrichment claim, *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154, n.1 (Iowa 2001) —and Yeisley herself offers no theory. *See* Opp. 15–16. What's more, Yeisley has also failed to show that it would be unjust for UIHC to keep any such benefit. To the contrary, as demonstrated above, UIHC's use of the pixel was fully compliant with every law that Yeisley invokes here. Accordingly, Yeisley's unjust enrichment claim must be dismissed.

### CONCLUSION

Because UIHC retains sovereign immunity over each of Yeisley's claims, and because Yeisley fails to state any viable claim, Yeisley's Complaint should be dismissed with prejudice.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Tessa M. Register*
TESSA M. REGISTER
Assistant Solicitor General

*/s/ Stan Thompson*
STAN THOMPSON
Deputy Attorney General

*/s/ Christopher J. Deist*
CHRISTOPHER J. DEIST
Assistant Attorney General
Iowa Department of Justice
1305 East Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Ph: 515-281-4951
Em: Stan.Thompson@ag.iowa.gov
Em: Tessa.Register@ag.iowa.gov
Em: Christopher.Deist@ag.iowa.gov
ATTORNEYS FOR DEFENDANT

All parties served via CM/ECF on Sept. 27, 2023.